UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

YAKO RUSO,                                                    **AMENDED COMPLAINT**

                Plaintiff,

    -   against -                                       **PLAINTIFF'S DEMAND
                                                             FOR TRIAL BY JURY**

EDWARD A. MORRISON, ESQ., EDWARD A.
MORRISON, P.C., CATHAY CONTINENTAL
GROUP, LTD., PAUL HOLDER,                                     **Case No.: 08 CIV 3724 (PKC)**
INDIVIDUALLY AND AS SOLE MEMBER AND
MANAGING MEMBER OF OXFORD III, LLC.,
AND OXFORD III, LLC.,

                Defendants.

------------------------------------------------------------------X

       PLAINTIFF, by his attorney, Michael L. Macklowitz, as and for his Complaint

against the DEFENDANTS, alleges as follows:

## NATURE OF ACTION

    1.     This action is brought by the PLAINTIFF, a Turkish citizen, who was solicited by

the DEFENDANTS through misrepresentation and fraud to enter into a series of investment

agreements and transactions for the period May, 2003 through and including December, 2004

with Edward A. Morrison, Esq., Individually and as an officer, shareholder and director of

Cathay Continental Group, Ltd., Paul Holder, Individually and as a managing member of Oxford

III, LLC.. These DEFENDANTS defrauded the PLAINTIFF through written and oral material

misrepresentations and omissions. PLAINTIFF contends that the totality of the circumstances

constitute common law fraud; breach of contract, negligence, misappropriation of funds and

breach of fiduciary duty.

## PARTIES

2.      PLAINTIFF, Yako Ruso, is an adult individual, citizen and resident of Istanbul, Turkey and hereinafter referred to as "PLAINTIFF" and/or "RUSO",

3.      At all times mentioned herein, DEFENDANT, Edward A. Morrison, an attorney, is an adult individual, citizen and resident of the State of New York, County of Columbia and maintained his law practice in Albany, New York and hereafter referred to as "MORRISON".

4.      At all times mentioned, DEFENDANT, Edward A. Morrison, P.C., a professional corporation maintained its principal place of business in State of New York, County of New York, and hereafter referred to as "MORRISON, PC".

5.      Upon information and belief, and at all times mentioned, DEFENDANT, Cathay Continental Group, LTD, is a New York Corporation, with its principal place of business in the State of New York, County of Albany,  hereafter referred to as "CATHAY CORP.".

6.      Upon information and belief, DEFENDANT, Paul Holder, is an adult individual, a citizen and resident of the State of Nevada, County of Washoe, and hereafter referred to as "HOLDER".

7.      Upon information and belief, and at all times mentioned, DEFENDANT, Oxford III, LLC, a duly formed Nevada Limited Liability Company, in which HOLDER, a resident of the State of Nevada, is the sole member and managing member of the Limited Liability Company  and maintains its principal place of business in the State of Nevada, County of Washoe and hereinafter referred to as "OXFORD".

8.      The Parties herein shall from time to time be collectively referred to as the "DEFENDANTS".

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332, in that the citizenship of the PLAINTIFF is diverse from the citizenship of each of the

DEFENDANTS, and that the matter in controversy, exclusive of interest and cost, exceeds the

sum of $75,000.00.

10.     Venue is proper pursuant to 28 U.S.C. Section 1391, in that, this judicial district

is one in which a DEFENDANT resides or maintains its principal place of business, within the

meaning of 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.     In or about May, 2003, PLAINTIFF traveled to the United States for a pre-

arranged meeting with MORRISON, an attorney at law, licensed to practice law in the State of

New York. The initial meeting took place in New York City, at which time, MORRISON

represented that he, as an attorney, had the ability to invest PLAINTIFF'S money in certain

lucrative investment opportunities which he defined as Private Income Enhancement Programs.

12.     On or about May 12, 2008, MORRISON, as an attorney, induced PLAINTIFF,

without the benefit of counsel, to enter into a Joint Participation Agreement with CATHAY

CORP. of which MORRISON was, upon information and belief a non-disclosed officer, director

and shareholder.

13.     The Joint Participation Agreement provided that PLAINTIFF was to supply the

financing and CATHAY CORP. represented by MORRISON, had the investment knowledge

and technical ability to place PLAINTIFF's money in safe international investment projects that

would provide extraordinary high rates of return.

14.    Attached hereto as Exhibit "A" is a copy of the Joint Participation Agreement, which provides in part that CATHAY CORP. will verify, authenticate and appropriately protect and structure the financing of $5,000,000.00 to be provided by the PLAINTIFF.    This amount, as set forth below, was subsequently reduced by agreement to $4,500,000.00 and then to $2,500,000.00.

15.    The Joint Participation Agreement further provided that CATHAY CORP. was to invest PLAINTIFF's money in a private placement international investment project for the benefit of both parties, in that CATHAY CORP. would receive 40% of any net profit realized in return for their skill in placing the funding; and PLAINTIFF was to receive 60% of the net profits generated for his providing the financing.

16.    In addition to the Joint Participation Agreement, PLAINTIFF entered into two (2) separate agreements with MORRISON; the first being an Escrow Agreement, dated May 8, 2003, attached hereto as Exhibit "B"; and a Power of Attorney, in favor of MORRISON, dated May 8, 2003, attached hereto as Exhibit "C".

17.    The Power of Attorney given to MORRISON authorized MORRISON to act as PLAINTIFF's exclusive attorney and trustee with the ability to disburse money from PLAINTIFF's bank account, funded by PLAINTIFF, set up in PLAINTIFF's name, but maintained by MORRISON at a bank near MORRISON's office. The Power of Attorney authorized MORRISON to invest in specific investment programs after first obtaining proper collateral or security guarantees necessary to protect the investment.

18.    The Escrow Agreement between PLAINTIFF and MORRISON was for the sole purpose of receiving the income, dividend or benefits of the investment program that would then be distributed by MORRISON pursuant to the Joint Venture Agreement.

19.    After executing these documents at MORRISON's office, the PLAINTIFF returned to Turkey and wire transferred $4,500,000.00 into the trust account, previously mentioned, in the name of the PLAINTIFF for which MORRISON, using his Power of Attorney could deposit or withdraw money for the transaction.

20.    PLAINTIFF, a resident and citizen of Turkey, relied upon the representations made by MORRISON, an attorney at law, in that his money would be safe in MORRISON's hands and that the investments recommended by MORRISON were legitimate and secure.

21.    MORRISON introduced PLAINTIFF to HOLDER, who, upon information and belief was and is presently the sole member and the managing member of OXFORD.

22.    MORRISON, Individually and as a member of CATHAY CORP. and HOLDER, Individually and as the managing member of OXFORD induced the PLAINTIFF, through misrepresentation and fraud, to enter into a Participation Revenue Certificate Agreement, attached hereto as Exhibit "D".

23.    This agreement (Participation Revenue Certificate), executed by MORRISON on behalf of PLAINTIFF, in essence committed PLAINTIFF'S's $4,500,000.00 to HOLDER and OXFORD for the purpose of investing in a specific secured financial transaction that would yield a return of $3,000,000.00 weekly for a period of forty (40) weeks.

24.    MORRISON, a seasoned attorney and shareholder of CATHAY confirmed to PLAINTIFF that this unusual investment was safe, secure and rewarding.   In fact, it was neither safe, secure nor income producing.

25.    The documents previously executed between CATHY, MORRISON and PLAINTIFF provided that no money would be released without first receiving and authenticating proper collateral security and guarantees.

26.     Sometime subsequent to the execution of the documents, referenced herein, the

DEFENDANTS, without PLAINTIFF's authorization or knowledge decided to commit

PLAINTIFF's funds to a completely new and unrelated bogus investment scheme, in what

MORRISON and HOLDER, believed to be a more lucrative investment.

27.     Fortunately for the PLAINTIFF, though unaware of the DEFENDANT's decision

to commit his funds elsewhere, PLAINTIFF requested and received the return of $2,000,000.00,

just prior to the DEFENDANT's dissipation of the remaining funds into this new fraudulent

venture or investment scheme, leaving $2,500,000.00 available over which MORRISON

maintained the Power of Attorney.

28.     MORRISON and CATHAY without securing PLAINTIFF's consent entered into

a new financial transaction with HOLDER and OXFORD, neither contemplated nor authorized

by the PLAINTIFF.

29.     In return for worthless foreign stock certificates provided by HOLDER and

OXFORD, MORRISON recklessly and negligently released the PLAINTIFF's funds.

30.     MORRISON subsequently provided the following accounting for his release of

the PLAINTIFF's funds:

| DATE | AMOUNT | PURPOSE |
|------|--------|---------|
| 05/23/03 | $4,500,000.00 | Deposit by Yako Ruso into trust account |
| 06/25/03 | $ 308,259.00 | Insurance Premium payment on Gabriel Monies |
| 08/01/03 | $ 125,000.00 | Payment to Paul Holder, Oxford III |
| 09/30/03 | $ 40,000.00 | Payment to Paul Holder, Oxford III |
| 10/08/03 | $ 400,000.00 | Part payment of taxes on Gabriel Monies |
| 10/27/03 | $ 271,775.00 | Loan to be repaid by Y. Sourang |

| | | |
|---|---|---|
| 10/28/03 | $  400,000.00 | Part payment of taxes on Gabriel Monies |
| 10/29/03 | $2,000,000.00 | Loan to Yako Ruso - return of Money |
| 10/30/03 | $  250,000.00 | Monies paid to Paul Holder, Oxford III |
| 11/07/03 | $  700,000.00 | Final Payment of taxes on Gabriel matter |
| 02/01/04 | $      4,966.00 | Disbursements paid to Morrison for: Bank charges, telephone calls, express mail, etc. On Gabriel matter. |

TOTAL     $4,500,000.00

31.     MORRISON failed to adequately investigate and protect PLAINTIFF'S funds by failing to receive proper security or safeguards or insure the authenticity of the transaction prior to the release of PLAINTIFF's funds.

32.     HOLDER, Individually and on behalf of OXFORD acting together with MORRISON and CATHAY with reckless disregard to authenticate or secure the funds prior to their release, negligently and fraudulently depleted all of the PLAINTIFF's funds.

33.     In June, 2004, in an attempt to keep PLAINTIFF from commencing litigation, HOLDER on behalf of OXFORD sent what he represented to be a Promissory Note to PLAINTIFF and MORRISON.

34.     A careful review of this document, although it purports to be a Promissory Note is conditioned upon the receipt of certain account receivables.

35.     MORRISON never advised PLAINTIFF that such Note is not a true collectable Promissory Note.

36.     MORRISON negligently and recklessly paid out PLAINTIFF's money without questioning the authenticity of the transaction.

37.     MORRISON recklessly misappropriated PLAINTIFF's money to his own use by lending an individual, Y. Sourang, the sum of $271,775.00, which had no relationship to any financial transaction.

**AS AND FOR FIRST CAUSE OF ACTION AGAINST DEFENDANTS,
EDWARD A. MORRISON, ESQ., EDWARD A. MORRISON, P.C. CATHAY
CONTINENTAL GROUP, LTD., PAUL HOLDER, INDIVIDUALLY AND AS AN
OFFICER, DIRECTOR AND SHAREHOLDER OF OXFORD III, LLC.,**

### (Common Law Fraud)

38.     PLAINTIFF repeats and reiterates each and every allegation contained in paragraphs " 1 " through " 37 " as if fully set forth herein at length.

39.     DEFENDANTS knew that their oral representations and written representations were materially false and misleading and reflect omissions of material facts, which were necessary so as to prevent the statements made from being materially misleading and false, and therefore the individuals and corporate entities should be personally libel for their acts.

40.     The DEFENDANTS intended that the PLAINTIFF would rely upon the aforesaid false and fraudulent misrepresentations in order to induce the PLAINTIFF to enter into an Investment Agreement for the placement of his funds.

41.     PLAINTIFF did in fact rely upon oral and written misrepresentations and omissions of the DEFENDANTS in that MORRISON and CATHAY had the investment knowledge and technical ability and that the transactions were authentic as represented by HOLDER and OXFORD, and Plaintiff's funds would be protected and secured from loss.

42.     PLAINTIFF's funds were paid out without receiving any proper security and dispensed by agreement between MORRISON and HOLDER for their own personal gain.

43.     The funds released by MORRISON were not applied to any intended investment opportunity, but rather to a scheme based upon speculation and fraud.

44.    As a result of the false and fraudulent representations and omissions by the DEFENDANTS, PLAINTIFF is hereby entitled to the recover all of his principal investment, together with the interest to be determined at trial, but not to be less than $2,500.000.00 in compensatory damages and $5,000,000.00 punitive damages.

## AS AND FOR SECOND CAUSE OF ACTION AGAINST DEFENDANTS, EDWARD A. MORRISON, ESQ., INDIVIDUALLY, EDWARD A. MORRISON, P.C. AND CATHAY CONTINENTAL GROUP, LTD

### (Breach of Contract)

45.    PLAINTIFF repeats and reiterates each and every allegation contained in paragraphs " 1 " through " 44 " as if fully set forth herein at length.

46.    DEFENDANTS knowingly and intentionally breached the terms of their Agreements with the PLAINTIFF, in that the DEFENDANTS failed to verify, authentic, appropriately protect or structure any sound investment opportunity for PLAINTIFF's funds.

47.    That the DEFENDANTS continued to issue false and misleading oral misrepresentations regarding PLAINTIFF investments, in an attempt to pacify the PLAINTIFF from pursuing any action. More specifically, MORRISON failed to provide the PLAINTIFF with any of the details of the transactions entered into by him and CATHAY and further failed to provide any documentation representing the security for or the nature of the transactions.

48.    MORRISON without the PLAINTIFF's knowledge or consent gave a loan to an individual in the amount of $271,775.00, which had no relationship to any investment transaction entered into with the PLAINTIFF.

49.    The foregoing constitutes a breach of the terms their investment agreement.

50.    As a result, PLAINTIFF has been damaged in an amount to be determined at trial but believed not to be less that $2,500,000.00.

## AS AND FOR THIRD CAUSE OF ACTION AGAINST DEFENDANTS, EDWARD A. MORRISON, ESQ., INDIVIDUALLY, EDWARD A. MORRISON, P.C. AND CATHAY CONTINENTAL GROUP, LTD

### (Negligence)

51.     PLAINTIFF repeats and reiterates each and every allegation contained in paragraphs " 1 " through " 50 " as if fully set forth herein at length.

52.     The DEFENDANTS recklessly and negligently released the PLAINTIFF's funds by failing to investigate, authenticate or secure any guarantees or proper security or provide safety for the funds released.

53.     DEFENDANTS failed and refused to advise PLAINTIFF of the investment made the security received and the actual accounting of the disbursement of his funds.

54.     It was not until October 2006 that MORRISON sent PLAINTIFF an accounting of the disbursement of the funds.

55.     As a result of the grossly negligent and reckless actions of DEFENDANTS described herein, PLAINTIFF has been damaged by the total loss of all his investment.

56.     As a result of the foregoing, PLAINTIFF is entitled to recover from the DEFENDANTS an amount to be determined at trial but not less than $2,500,000.00..

## AS AND FOR FOURTH CAUSE OF ACTION AGAINST DEFENDANT EDWARD A. MORRISON

### (Breach of Fiduciary Duty)

57.     PLAINTIFF repeat and reiterate each and every allegation contained in paragraphs " 1 " through " 56 " as if fully set forth herein at length.

58.     MORRISON, as a duly licensed attorney at law in the State of New York, induced the PLAINTIFF into providing him with a Power of Attorney over an account in which the PLAINTIFF placed his funds.

59.     MORRISON, as an attorney at law and as a recipient of a Power of Attorney, pursuant to agreement, had a fiduciary duty, in that he represented to the PLAINTIFF these funds would be used for investments that were secure and protected and that prior to releasing any funds, the investment would be sound and he would secure proper security or collateral.

60.     In fact, MORRISON breached his fiduciary duty by failing to protect the PLAINTIFF's funds and released said funds without investigating the nature of the investment or the risks involved.

61.     MORRISON without permission or authority from the PLAINTIFF made loans to individuals in excess of $270,000.00 and released other funds without any legitimate reason to release said funds.

62.     By reason of the breach of his fiduciary duty, PLAINTIFF has been damaged and is entitled to an amount to be determined at trial but believed to be not less than  $2,500,000.00.

## AS AND FOR FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT EDWARD A. MORRISON, INDIVIDUALLY
## EDWARD A. MORRISON, P.C. AND CATHAY CONTINENTAL GROUP, LTD.

### (Misappropriation of Funds)

63.     PLAINTIFF repeat and reiterate each and every allegation contained in paragraphs " 1 " through " 62 " as if fully set forth herein at length.

64.     In or about October 2003, DEFENDANTS released the sum of $271,775.00 to an individual known as Y. Sourang, as a loan to be repaid..

65.     DEFENDANTS did not have the authority to issue any loans from PLAINTIFF'S

investment funds to any individuals or entities.

66.   DEFENDANTS misappropriated PLAINTIFF's funds by issuing this loan.

67.   This loan has never been repaid nor did the DEFENDANT'S seek  any security for this loan.

68.   By reason of the DEFENDANTS actions PLAINTIFF has been damaged in the sum of $271,775.00.

*WHEREFORE,* PLAINTIFF demand judgment:

a)   On the first cause of action for fraud against all DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined by the Court, but not less than $ 2,500,000.00, together with an amount to be determined by the Court representing punitive damages, but not less than $5,000,000.00 for the willful fraud by the DEFENDANTS, together with interest, fees and costs;

b)   On the second cause of action for breach of contract against DEFENDANTS, Edward A. Morrison, Edward A. Morrison, P.C. and Cathy Continental Group, Ltd. jointly and severally, (I) an amount to be determined at trial but believed not to be less than $2,5000,000.00 (ii) together with interest, fees and  cost of this action;

c)   On the third cause of action for Negligence, against DEFENDANTS, Edward A. Morrison, Edward A. Morrison, P.C. and Cathy Continental Group, Ltd. jointly and severally, for compensatory damages in an amount to be determined by the Court, but not less than $2,500,000.00, together with interest, fees and costs of this action;

d)   On the fourth cause of action for Breach of Fiduciary Duty against DEFENDANT, MORRISON, for compensatory damages to be determined by the Court, but not less than $ 2,500,000.00, together with interest, fees and costs of this action;

e)    On the fifth cause of action for Misappropriation of Funds against

DEFENDANT Edward A. Morrison, for compensatory damages to be determined by the Court,

but not less than $271,775.00, together with  interest, fees and costs;

F)    An award of reasonable attorneys fees;

G)    All together with interest, costs and disbursements of this action and such

other and further relief as this court deems just and proper.

Dated: New York, New York
       May 1, 2008


MICHAEL L. MACKLOWITZ, ESQ. (MLM0047)
Attorney for the PLAINTIFF
299 Broadway, Suite 1405
New York, New York 10007
(212) 227-6655

# EXHIBIT "A"

## JOINT PARTICIPATION AGREEMENT

For the execution of International Projects

May 12, 2003

Between **Yako RUSO** and **CATHAY CONTINENTAL GROUP LTD.**, the nominated Directors dealing with this Agreement, on the behalf of the above Corporation are :

### 1.   Yako RUSO

| | |
|---|---|
| Represented by: | Yako Ruso |
| Passport No: | Turkish. 562095 |
| Address : | Tesviklye Cad, 117/7, Cevre Apt.Nisantasi |
| | 80200 ISTANBUL – TURKEY |

### 2.   CATHAY CONTINENTAL GROUP LTD.

| | |
|---|---|
| Represented by: | Edward A. Morrison – ATTORNEY at LAW |
| Passport No: | US. 111 320 407 |
| Address: | 150 State Street, Albany, New York, 12207– U.S.A. |

The purpose of this Joint Participation Agreement (hereinafter referred to as JPA) is to define the objectives the JPA and the duties of the Parties involved their respective responsibilities in achieving the objective of the JPA and the subsequent remuneration of each Party.

### Object of the JPA

The object of the JPA for both Parties to this Agreement is, by the use of their financing, investment knowledge and technical abilities, to jointly provide funding for their respective international projects.

This Agreement is not a Joint Venture Agreement , Partnership Agreement, nor a Fee Agreement, but is a Joint Participation Agreement which relates only to arranging of Funding to enable each Party to execute their own International projects.

Duties of the parties involved and their respective responsibilities for achieving the objective of the JPA.

1.   **CATHAY** - To verify, authenticate and appropriately protect and structure the amount of US$5'000'000 currently deposited in cash with Union Bancaire Privée located in Geneva, Switzerland, with Fleet Bank, Hudson, N.Y. USA, as receiving bank.

To source, negotiate and arrange, with suitable Financial Institutions an acceptable Investment return from the use of the amount of  FIVE MILLION of United State Dollars (US$5'000'000.00) by their hypothecation  and for the process hereof to be entered into an acceptable Private Placement Investment to enable International Project Funding to be obtained for both Parties of this Agreement.

To execute projects on behalf of each of the aforementioned Parties including the provision, through **CATHAY CONTINENTAL GROUP LTD.,** of all professional Consultancy Services and Project Coordination & Supervision Services to ensure a satisfactory completion of all projects entered into and to provide on going Project Management Services, if and when required.

2. **Yako RUSO**  - To provide  the amount of FIVE MILLION United States Dollars ($US5'000'000.00) with Fleet Bank as receiving bank.

Note: Each party to be responsible for their own cost and taxes in relation to the execution of the JPA and to account separately for their activities.

## Remuneration

1. **Yako RUSO –**        **SIXTY percent (60%)** share of all the net profits generated from the returns obtained from the investment of  the hypothecation detained from the amount of FIVE MILLION United States Dollars (US$5'000'000.00), being entered into an acceptable Private Placement Investment Opportunity.

2. **CATHAY –**        **FORTY percent (40%)** share of all of the net profits generated from the returns obtained from the investment the hypothecation detained from the amount of FIVE MILLION United States Dollars (US$5'000'000.00), being entered into an acceptable Private Placement Investment Opportunity.

## General

Amendments to this JPA are only valid if put in writing. If parts of this JPA are, or become invalid, or unenforceable, the remainder shall remain in force and the Parties shall co-operate in good faith to replace them with valid and enforceable ones.

Strict non-circumvention and non-disclosure and source / Client information protection as defined by the International Chamber of Commerce in Paris shall apply between the parties and their respective Associates / Agent / Representatives .

The contravening party shall forfeit to the other party any and all economic advantage provided in connection with a contravention. This article shall survive the contract and shall remain valid for a period of five (5) years.

This JPA , as well as any documents relating thereto made by telefax shall be deemed as originals for all purposes.

The Cash Deposit will be protected by delivery of Bank Instruments (MTNs) during one year and one month period.

The Law of U.S.A. shall apply to this contract.

Both Parties unconditionally warrant and represent that they are the true and legal responsible signatories to this JPA and as such , hereby jointly, severely, personally and corporately guarantee the performance of the JPA hereunder.

Signed on behalf of YAKO RUSO


Name:        **Yako Ruso**                      SEAL
Title:       Investor / Participant
Passport No: Turkish 562095

                                               Notary


Date : May 12, 2003

Signed on behalf of CATHAY


Name:        **Edward Allan Morrison**
Title:       Attorney at Law                   5/22/2003
Passport No: US 111 320 407

# EXHIBIT "B"

## ESCROW AGREEMENT

Agreement made as of the 8th day of May, 2003, by and among Yako Ruso with Offices located at Tesviklye Cad, 117/7, Cevre Apt.- Nisantasi, 80200 Istanbul, Turkey, hereinafter called "the Client", and Edward A. Morrison, an Attorney at Law with Offices located at 150 State Street, 4th Floor, Albany, New York 12207, hereinafter called the "Escrow Agent"

Whereas, the Client, has chosen the Escrow Agent to receive the income derived from the investment of Five Million dollars ($5,000,000.00 USD) with a named Provider of a Private Income Enhancement Program, and

Whereas, the Escrow Agent has accepted the responsibility of receiving in his Escrow Account the deposit of such income paid over by a named Provider, on behalf of named beneficiaries and thereafter distributing such income pursuant to a written pay order received from the Client, , less the necessary Bank expenses incurred in the administration of such escrow account; and the implementation of the pay order(s) received by the Escrow Agent from the Client, and

Whereas, the Parties desire to provide for the holding and disposition of such deposits.

Now, Therefore, in consideration of the mutual covenants herein contained, the Parties hereby nominate, constitute and appoint Edward A. Morrison, Esq., as the Escrow Agent to hold the Deposit(s) on the terms and conditions hereinafter provided herein:

1.      Further Bank charges for wire transfer of moneys to each of the named beneficiaries shall be reimbursed to the Escrow Agent from the account of each of the named beneficiaries in an amount charged by the Bank for the wire transfer of moneys to that individual beneficiary.

2.      Upon the receipt by the Escrow Agent's Bank Account of these income deposits from the Provider, the Escrow Agent shall follow the written directions provided by the Client in making payments to the named beneficiaries over a period of about 40 weeks.

3.      The Client shall provide the appropriate tax identification number and make it available to the Agent's Bank or Financial Institution upon its request, so as to comply with the requirement that the name of the individual investor who is entitled to that portion of the income received and provided in the Pay Order delivered to the escrow agent, shall pay any applicable tax incurred thereby.

Escrow Agent shall make reasonable efforts to keep the Deposit at interest for so long as it

Page 1



shall hold the Deposit, but shall have no liability to the Client or any of the named beneficiaries for its failure to do so.

4.     In the event Escrow Agent receives or becomes aware of conflicting demands or claims with respect to this Agreement or the right of any of the beneficiaries hereto, or the Deposit, or any funds, securities, property or documents deposited herein or affected hereby, Escrow Agent shall have the right in his discretion, to discontinue any or all further acts on its part until such conflict is resolved to his satisfaction, provided that Escrow Agent shall act in accordance with this Agreement.

5.     Escrow Agent shall have the further right to commence or defend any action, or proceedings for the determination of any conflict referred to in paragraph 4 above..  The Client and the named beneficiaries severally agree to pay all costs, damages, including reasonable attorneys' fees, suffered or incurred by Escrow Agent in connection with or arising out of this Agreement, including, but without limiting the generality of the foregoing, a suit in interpleader brought by Escrow Agent. In the event, Escrow Agent files a suit to interpleader, it shall be fully released and discharged from all further obligations to perform any and all duties or obligations imposed upon it by this Agreement.

6      Escrow Agent is hereby given a lien on the ongoing deposits, and any interest thereon, to protect indemnify and reimburse itself for all costs, expenses, and liabilities arising out of this Agreement.

Further, Escrow Agent shall not be liable for any error of judgment or for any act done or omitted in good faith do or refrain from doing in connection herewith, nor for any negligence other than its gross negligence; nor shall Escrow Agent be answerable for any loss of all or any part of the Deposit so long as it it is held in the Bank or Financial Institution it has chosen with the consent of the Investors; nor will any liability be incurred by Escrow Agent if, in the event of any dispute or question as to it duties or obligations hereunder, it acts in accordance with the legal opinion of its legal counsel.

7.     All notices, instructions, requests or other communications which may be given hereunder shall be in writing and shall be delivered by both email and facsimile (Fax) to all Parties named herein.

8.     No provision of this escrow Agreement shall preclude the escrow agent named herein from performing other duties as an attorney at law on behalf of any of the investors either individually or collectively.  Such responsibilities shall be undertaken pursuant to separate retainer agreements, specifying the duties to be undertaken, and the cost of such legal services.

9.     This Agreement   shall be construed in accordance with and governed by the Laws of the State of New York and shall be binding upon Escrow Agent and the Client and the



Page 2

named beneficiaries and their respective successors and assigns.

10.    This Agreement may be executed by the Parties through the use of a fax machine, and the facsimile signatures shall be accepted as original signatures by the Parties.




**In Witness Whereof,** the Parties have hereunto set their hands and seals as of the day and Year first above stated.


YAKO RUSO.

BY: _____
Yako Ruso




Edward A. Morrison, Escrow Agent


BY: _____
Edward A. Morrison                5/22/03



Page 3

# EXHIBIT "C"

№09333

To:    Mr. Edward A. Morrison, Attorney-at-law

## SPECIFIC POWER OF ATTORNEY

I, Yako RUSO, hereinafter called the PARTICIPANT, as the true owner of US$5'000'000, with address at Tesviklye Cad, 117/7, Cevre Apt.Nisantasi 80200 Istanbul, Turkey, holder of the Turkish passport number: 562095 expiring on April 24, 2006, hereby irrevocably resolved the followings:

1.    Mr. Edward A. Morrison, Attorney, hereinafter called the LAWYER, whose Law Offices are located at 150 State Street, Albany, New York 12207, is empowered to act on behalf of the PARTICIPANT as his exclusive Attorney and Trustee in any and all circumstances with regard to the purposes specified in the paragraph 5 of this Specific Power. Thus, the LAWYER represents the PARTICIPANT'S interests and is fully authorized to open appropriate bank accounts, sign agreements, negotiate, hypothecate, commit the PARTICIPANT'S funds and any and all funds involved in or resulting from financial activities with a view to achieving the PARTICIPANT'S rights and purposes.

2.    The LAWYER shall make safe the PARTICIPANT'S interests by executing any and all operations through secure protocols and procedures that might contractually be set up with relevant counterparts.

3.    PURPOSES: The LAWYER is authorized to use the initial amount of US$5'000'000 for the following actions and purposes: (a) – the making of necessary arrangements with all the parties involved in order to grant the PARTICIPANT his joining in a contract of an income enhancement program signed or to be signed between the LAWYER and the PROVIDER on behalf of a LEADING INVESTOR; (b) – the addition of the US$5'000'000 to the contractual funds of the LEADING IINVESTOR; (c) – the obtaining of Bank Guarantees (MTNs) from the PROVIDER for securing the total amount of the investment including the US$5'000'000; (d) – the bi-weekly payments of US$6'000'000 (US$3'000'000 per week) for forty (40) weeks after six (6) weeks as of the date the initial participation amount of US$5'000'000 is received on the LAWYER'S escrow account.

4.    It must be understood that: (a) the PARTICIPANT shall sign to the LAWYER a Joint Participation Agreement for the share of the Gross profit from which sixty (60) percent shall be paid to the PARTICIPANT and forty (40) percent to the LAWYER for various actions and services; (b) – the LAWYER shall not be bound to disclose the identity of LEADING INVESTOR to the PARTICIPANT. However, the LAWYER shall communicate any and all terms and conditions of the income enhancement program to the PARTICIPANT; (c) – the PARTICIPANT shall not be charged with any additional fees or commissions, thus, the financial results paid to him shall be considered all fees included; (d) – cash may be replaced by discountable financial instruments issued by high-rated institutions; (e) – this is an arrangement made between the LAWYER and the PARTICIPANT for taking opportunities of allowing the PATICIPANT to enter an income enhancement program by participation in a LEADING INVESTOR'S contract; (f) – in the event of the PROVIDER, the LAWYER and/or LEADING INVESTORS should not grant the PARTICIPANT any opportunities to enter an income enhancement program, no withdrawal whatever shall be made on the PARTICIPANT'S funds; (g) – payments shall be made through the LAWYER'S escrow account; (h) – the LAWYER shall open up a subsidiary escrow account for the PARTICIPANT to transfer the initial amount of US$5'000'000.

Initials                                       1/2



№ 0 9 3 3 3

TERM: This SPECIFIC POWER shall solely be given for thirteen (13) months from the date of its execution.

6.    FORCE MAJEURE: The LAWYER and the CO-ORDINATOR shall not be liable for any failure to perform under the "Force Majeure": clause as stated in the standards of the International Chamber of Commerce (ICC), Paris, France, which clause is deemed to be incorporated herein.

7.    COPIES: A signed copy of this two-page Specific Power shall have the same force and effects as an original. Copies shall include, but not be limited to, any electronic transmittals, facsimiles and e-mail transmissions.

This SPECIFIC POWER has been executed this 08th day of May 2003.

**Yako RUSO**
**THE PARTICIPANT**                                          **NOTARY**

MEHMET BEŞLIOĞLU
VEKİLİ BAŞKATİP
ÖMER BAYRAKTAR

_____
**Mr. Yako RUSO**

İngilizce ve Türkçe olarak hazırlanan bu vekaletname metinlerinin doğru olarak çevrildiğini onaylarım.

YEMİNLİ ÇEVİRMEN
SEDAT ORTAY

Bu İngilizce ve Türkçe vekaletname altındaki imzanın şahıs ve hüviyetini ibraz ettiği İstanbul Valiliğinden 25.04.2001 tarihinde 562095 seri sayı ile verilen resmi onaylı pasaporta göre 25.01.1941 İstanbul doğumlu Yako RUSO'ya ait olup dairede yanımda imzaladığını onaylarım. İki bin üç senesi Mayıs ayının yirmi altıncı günüdür. 26.05.2003

23 MAYIS 2003

ÖMER BAYRAKTAR

# EXHIBIT "D"

PARTICIPATING REVENUE CERTIFICATE

1.  Yako Ruso, hereinafter called the "Participant Buyer" with Offices located at Tesviklye Cad, 117/7, Cevre Apt. Nisantasi 80200, Istanbul, Turkey, and holder of the Turkish Passport number 582095 expiring on April 24, 2008, and who has duly authorized and empowered Edward A. Morrison, Esq., hereinafter called "Attorney", whose law offices are located at 150 State Street, Albany, New York 12207, to act on behalf of the Participant Buyer as his exclusive attorney and Trustee, including opening appropriate Bank Accounts, sign Agreements on behalf of the Participant Buyer, negotiate, hypothecate and commit the Participant Buyer's funds in the present amount of Four and one half Million Dollars ($4,500,000.00 USD) to be invested in a Private Income Enhancement Program operated and controlled by OxfordIII, LLC., with Mr. Paul Holder as Managing Director, hereinafter called the "Provider", with Offices located at 780 North McCarran Blvd., Sparks, NV 89431, and invested by Oxford III, LLC., consistent with the following terms of this Participating Revenue Certificate, which shall constitute the Contract between the Parties hereto, and executed this date.

2.  The Provider, Oxford III, LLC., hereby agrees to pay over a specified income to the Participating Buyer, derived from the Provider's Income obtained from the earnings of the Provider pursuant to a certain irrevocable Master Fee Protection and Pay Order Agreement relating to the sales of specified financial instruments having a value of over three Billion Dollars. Such income to be paid by the Provider to the Participating Buyer shall be the sum of approximately Six Million ($6,000,000.00 USD) Dollars on a Bi-weekly basis ($3,000,000.00 per week) ..

3.  Said earned income shall be paid by the Provider on the said Bi-weekly basis for a period of Forty Weeks . and such payment shall take place before any expenses have been deducted by the Provider. Payment shall be made by Swift wire to the Fleet Bank Escrow Account of Edward A. Morrison, as Agent for Mr. Yako Ruso. The Banking coordinates of said Escrow Account are attached to this Agreement and are incorporated herein by reference.

4.  Payment(s) of earned income made by the Provider pursuant to the terms herein, shall not be intermingled with other monies payable to the Provider.

5.  Immediately after receipt of the first income payment to the Participant Buyer, Yako Ruso, pursuant to this Agreement, the Participant Buyer shall cause to be Swift wired to the Provider the additional sum of Five Hundred Thousand ($500,000.00USD) making a total of Five Million ($5,000,000.00 USD) paid over to the Provider by the Participant Buyer. Notwithstanding this additional payment of investment monies made by the Participant Buyer to the Provider, no additional income shall be derived from the total investment of Five Million Dollars to be paid to the Participant Buyer. Paragraph 2, (supra) of this Certificate shall control the amount of earned income to be paid to the Participant Buyer.

Page 1

6    The earned income to be paid by the Provider to the Participant Buyer shall commence upon the initial payment to the Provider from the Irrevocable Fee Protection and Pay Order Agreement to which the Provider is a named Party, and shall continue for the contract term provided for in the Contract between the Provider and the Participant Buyer, namely, a period of Forty (40) weeks. At the conclusion of this time period, this Certificate shall be terminated unless both Parties agree in writing to an extension of time to continue this Certificate in effect.

7    The Provider in its sole and absolute discretion may agree to entertain a proposal from the Participant Buyer during the term of this Participating Revenue Certificate to accept additional monies from the Participating Buyer made from payments of income received by this Buyer from the Provider pursuant to this Certificate. If such compounding is agreed to by the Provider, such income investment with the Provider shall be subject to a further written Agreement.

8.    Notwithstanding the foregoing, the Provider in it's absolute discretion, may cause to be issued a series of Bonds in an amount of approximately Two Hundred Million Dollars ($200,000,000.00 USD) from which the Provider will guarantee to pay over to the Participating Buyer approximately thirty Five (35%) per cent of such face amount in lieu of any or further payments of income required by the preceding paragraphs of this Certificate.
A one time payment of seven (7%) per cent interest on the preceding guaranteed amount shall be made by the Participating Buyer to the Provider upon receipt by the Participating Buyer of the said guaranteed amount. Such Bonds may be caused to be issued by the Provider within approximately forty-five (45) days after written notice has been provided to the Participating Buyer by the Provider.

9.    The Parties hereby declare that they fully understand that the contemplated transaction is strictly one of private placement and are in no way relying upon or relating to the United States Securities Act of 1933, as amended, or related regulations, and does not involve the sale of securities. We mutually agree that this private placement transaction is exempt from the Securities Act and not intended for the general public and all materials are for Private Use only.

Dated:  July 30 ,2003

OXFORD III. LLC

By _Paul Holder_

Paul Holder, Managing Partner

YAKO RUSO

By _Edward A. Morrison_

Edward A. Morrison, Esq.
Attorney In Fact.

*Index No.*                    *· Year 20*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

### YAKO RUSO,

**Plaintiff,**

**- against -**

### EDWARD A. MORRISON, ESQ., *et al.,*

**Defendants.**

---

## AMENDED COMPLAINT

---

### MICHAEL L. MACKLOWITZ

*Attorney for*    **Plaintiff - Yako Ruso**

*299 Broadway, Suite 1405*
*New York, N.Y. 10007*
*Tel. (212) 227-6655*
*Fax (212) 732-6972*

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* **May 1, 2008**        Signature.....................................................................

                                       **Michael L. Macklowitz**
Print Signer's Name.............................................................

---

*Service of a copy of the within*                          *is hereby admitted.*

*Dated:*

.....................................................................................

*Attorney(s) for*

---

*PLEASE TAKE NOTICE*

Check Applicable Box

☐ NOTICE OF ENTRY

*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*              20

☐ NOTICE OF SETTLEMENT

*that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.*                                    *one of the judges of the within named Court,*
*at*
*on*                        20      *, at*                    *M.*

*Dated:*

### MICHAEL L. MACKLOWITZ

*Attorney for*

*299 Broadway, Suite 1405*
*New York, N.Y. 10007*

*To:*